# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IMMIGRANT DEFENSE PROJECT, )<br>HISPANIC INTEREST COALITION )<br>OF ALABAMA, CTR. FOR )<br>CONSTITUTIONAL RIGHTS, )<br>　　　　　　　　　　　　　　　　)<br>　　　　　　Plaintiffs, )<br>　　　　　　　　　　　　　　　　)<br>　　v. )<br>　　　　　　　　　　　　　　　　)<br>UNITED STATES IMMIGRATION & )<br>CUSTOM ENFORCEMENT AND )<br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY.<br>　　　　　　Defendants. | Civil Action No. 14-CV-6117 |

### DECLARATION OF KEVIN L. TYRRELL

I, Kevin L. Tyrrell, declare and state as follows:

1.  I am the Associate Director of FOIA Appeals and Litigation for the Department of Homeland Security (DHS) Privacy Office. In this capacity, I am the Department official immediately responsible for responding to appeals and litigation matters that arise under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access provisions. I have been employed by the DHS Privacy Office (DHS Privacy) in this capacity since July 2015. Prior to that, I held the position of FOIA Litigation Specialist. I have been with the Department since July 28, 2014. I make the following statements based upon my personal knowledge, which in turn is based on a personal review of the appropriate records in the case file and coordination with relevant FOIA personnel established for processing the subject request and upon information furnished to me in the course of my official duties.

1

2.      Through the exercise of my official duties, I have become familiar with the background of plaintiff's FOIA request and DHS's response. I have also become familiar with the background of this litigation and have read a copy of the complaint filed by plaintiff.

### The DHS Privacy Office FOIA Process

3.      DHS Privacy is the Department of Homeland Security's Privacy Office. DHS Privacy partners with privacy staff in every DHS component to assess all new or proposed programs, systems, technologies or rule-makings for privacy risks, and recommend privacy protections and alternative methods for handling personal information to mitigate privacy risks. DHS Privacy also centralizes FOIA and Privacy Act operations to provide policy and programmatic oversight, and support implementation across the Department.

4.      The mission of DHS Privacy is to preserve and enhance privacy protections for all individuals, to promote transparency of Department operations, and to serve as a leader in the privacy community. DHS Privacy (1) evaluates Department legislative and regulatory proposals involving collection, use, and disclosure of personally identifiable information (PII); (2) centralizes FOIA and Privacy Act operations to provide policy and programmatic oversight, and support implementation across the Department; (3) operates a Department-wide Privacy Incident Response Program to ensure that incidents involving PII are properly reported, investigated and mitigated, as appropriate; (4) responds to complaints of privacy violations and provides redress, as appropriate; and (5) provides training, education and outreach to build a culture of privacy across the Department and transparency to the public.

5. Some of the DHS Components (e.g., Customs and Border Protection (CBP) maintain a combined office that handles matters related to both the Privacy Act and the FOIA. Other Components (e.g., United States Immigration and Customs Enforcement (ICE)) maintain two separate offices, one for matters related to the Privacy Act and one for matters related to the FOIA.

6. Each Component maintains its own automated case tracking system which assigns case control numbers to, and tracks the status of, all FOIA and Privacy Act requests received by that Component. Components log all incoming FOIA and Privacy Act requests into their automated case tracking system, and input information about each request into the system (including, but not limited to, the requester's name and/or organization and, in the case of FOIA requests, the request's topic). All requesters are then notified of the case control numbers assigned to their requests. It is the custom of all Components to refer to the case control numbers in all correspondence with requesters. The automated case tracking systems are text searchable on a field-by-field basis.

7. When any DHS Component receives a referral or tasking from DHS Privacy, it mirrors the actions of DHS Privacy. Component FOIA personnel make a determination regarding which subcomponent or program office may have responsive documents, and then task that office with a search.

### DHS Privacy

8. On October 21, 2013, DHS Privacy received a FOIA/Privacy Act Request dated October 17, 2013 from the Requester and assigned it tracking number 2014-HQFO-00035. The request sought the following documents:

"1. Records from January 20, 2009 to present related to or containing: (1) policies, procedures, or objectives of home enforcement operations, including overview

3

>documents; target identifications; rules and protocols for home enforcement conduct; information sharing; performance goals or quotas; and misconduct; and (2) data and statistics of home enforcement operations, including operations conducted; arrest, detention, and removal data for particular counties; landlord participation; contraband; misconduct; and supervision."

The request also requested expedited processing and a waiver of fees pursuant to 5 U.S.C. 552 (a)(6)(E)(i)(I) and 5 U.S.C. 552(a)(4)(A)(iii).

9.      As previously noted, the DHS Privacy Office does not have a central database that may be searched for records that could be responsive to Freedom of Information and/or Privacy Act requests. Therefore, on November 1, 2013, DHS Privacy tasked the following components to search for responsive records; U.S. Immigration and Customs Enforcement (ICE), the Federal Law Enforcement Training Center (FLETC), United States Citizenship and Immigration Services (USCIS) and the DHS Office of Civil Rights and Civil Liberties (CRCL) to conduct a search for possible responsive records.

10.     The mission of the DHS Office of Civil Rights and Civil Liberties (CRCL) is to integrate civil rights and civil liberties into all Department of Homeland Security activities by (a) promoting respect for civil rights and civil liberties in policy creation and implementation by advising Department leadership and personnel, and state and local partners; (b) communicating with individuals and communities whose civil rights and civil liberties may be affected by Department activities, informing them about policies and avenues of redress, and promoting appropriate attention within the Department to their experiences and concerns; (c) investigating and resolving civil rights and civil liberties complaints filed by the public regarding Department policies or activities, or actions taken by Department personnel; and (d) leading the Department's equal employment opportunity programs and promoting workforce diversity and merit system principles.

11.     The Federal Law Enforcement Training Center (FLETC) provides training to law enforcement professionals throughout their careers to help them fulfill their responsibilities safely and proficiently. FLETC provides a standardized and consolidated training center that provides consistent, high quality training programs in state-of-the-art facilities for Federal law enforcement staff.

12.     United States Citizenship and Immigration Services (USCIS) is the government agency that oversees lawful immigration to the United States.  USCIS's mission statement is to secure America's promise as a nation of immigrants by providing accurate and useful information to our customers, granting immigration and citizenship benefits, promoting an awareness and understanding of citizenship, and ensuring the integrity of our immigration system.  USCIS has 19,000 government employees and contractors of USCIS working at 223 offices across the world. Achieving our goals becomes possible when the different elements of our organization are engaged and acting as partners working toward a common outcome. USCIS' strategic goals include: Strengthening the security and integrity of the immigration system; Providing effective customer-oriented immigration benefit and information services; Supporting immigrants' integration and participation in American civic culture; Promoting flexible and sound immigration policies and programs; Strengthening the infrastructure supporting the USCIS mission; Operating as a high-performance organization that promotes a highly talented workforce and a dynamic work culture.

13.     The DHS Office of United States Immigration and Customs Enforcement (ICE) promotes homeland security and public safety through the criminal and civil enforcement of federal laws governing border control, customs, trade, and immigration.  ICE was

5

created in 2003 through a merger of the investigative and interior enforcement elements of the former U.S. Customs Service and the Immigration and Naturalization Service. ICE now has more than 20,000 employees in more than 400 offices in the United States and 48 foreign countries. The agency is primarily devoted to two operational directorates — Homeland Security Investigations (HSI) and Enforcement and Removal Operations (ERO). A third directorate, Management and Administration (M&A), is charged with providing professional management and mission support to advance the ICE mission. ERO enforces the nation's immigration laws in a fair and effective manner. It identifies and apprehends removable aliens, detains these individuals when necessary and removes illegal aliens from the United States. This unit prioritizes the apprehension, arrest and removal of convicted criminals, those who pose a threat to national security, fugitives and recent border entrants. Individuals seeking asylum also work with ERO.  The HSI directorate is responsible for investigating a wide range of domestic and international activities arising from the illegal movement of people and goods into, within and out of the United States.  ICE's Management and Administration includes professional managers and mission support staff who make the ICE mission possible.

14. On November 18, 2013, FLETC made a release of 26 responsive documents directly to the requester.

15. On November 26, 2013, DHS Privacy Office received a no records response from USCIS indicating that they searched their database and found no records that matched the search criteria provided by the requester.

16. On December 10, 2013, DHS Privacy Office sent the requester an acknowledgment letter that denied the request for expedited processing and "held in

abeyance pending the quantification of responsive records" the request for a fee waiver and invoked the 10-day extension for answering the request.

17. On February 7, 2014, DHS Privacy sent the requester a final response letter indicating, a completed search of four components, the Office for Civil Rights and Civil Liberties (CRCL), Federal Law Enforcement Training Center (FLETC), U.S. Citizenship and Immigration Service (USCIS) and U.S. Immigration and Customs Enforcement (ICE). The letter read in part: "Unfortunately, we were unable to locate or identify any records within USCIS and CRCL, which are responsive to your request. Furthermore, a search of FLETC for documents responsive to your request produced 26 pages. Of those pages 4 pages of the records are releasable in their entirety, and 22 pages are partially releasable". The 26 responsive pages were attached to the final response letter.  (See Exhibit 1)

18. The February 7, 2014, DHS Privacy letter also informed the requester that "this office tasked ICE to search for records responsive to your request. As this component of DHS has not yet responded, DHS Privacy Office is referring your request to their respective FOIA Officers for direct response to you" and provided the contact information to ICE FOIA Office.

19. On February 10, 2014, DHS Privacy Office received an appeal from requester appealing DHS's denial of a fee waiver and expedited processing.

20. On February 11, 2014, DHS Privacy Office sent an acknowledgement letter to the requesters assigning appeal tracking number 2014-HQAP-00029 and informing them that the appeal would be forwarded to an administrative law judge for the United States Coast Guard for a determination on the appeal.[1]

---

[1] Pursuant to a memorandum of agreement, the United States Coast Guard Office of the Chief Administrative Law Judge has been delegated authority by the DHS Office of the General Counsel to

21.     On February 21, 2014, DHS Privacy received the decision dated February 21, 2014, from the Administrative Law Judge for the United States Coast Guard that notified the requester that "After a thorough review of your appeal and all applicable documents, your appeal is DENIED AS MOOT, for the reasons set forth infra." The basis of the denial was that on February 7, 2014, DHS Privacy Office had provided a response and assessed no costs and the response and records were provided prior to the appeal being filed.

22.     On March 3, 2014, DHS Privacy Office received email notification from the ALJ that the requester claimed they did not receive the February 7, 2014 final response letter and release.

23.     On March 7, 2014, DHS Privacy Office sent the requester the February 7, 2014, final response letter and responsive documents again.  It was determined that the requester never received the email from February 7, 2014 due to an incorrect email address.

24.     On April 8, 2014, DHS Privacy Office received an appeal dated April 3, 2014, from the requester appealing the adequacy of the search by CRCL, USCIS and FLETC

25.     On April 11, 2014, DHS Privacy Office sent an acknowledgement letter to the requester assigning appeal tracking number 2014-HQAP-00048 and informing them that the appeal would be forwarded to an administrative law judge for the United States Coast Guard for a determination on the appeal.

26.     On April 22, 2014, DHS Privacy Office received a clarification letter from requester seeking to verify the FOIA tracking number assigned and indicating that they

---

adjudicate FOIA appeals for certain components.   Other DHS components, such as ICE, adjudicate their own FOIA appeals.

were appealing all searches undertaken by DHS or referred to other components by DHS. This letter was forwarded to the ALJ to be included as part of the pending appeal.

27.     On June 4, 2014, the ALJ remanded the case for clarification as to the nature of the search for responsive records. The ALJ stated "Upon review of the materials provided by the Agency, I am unable to discern whether the search of its components was reasonable in light of your October 17, 2013, request. Therefore, the matter is REMANDED to the Agency for further information about the nature of the search performed."

28.     Based on the ALJ remand on June 5, 2014, DHS Privacy Office tasked CRCL, USCIS and FLETC to provide more detail on the searches that were conducted.

30.     On June 11, 2014, the ALJ issued its final determination upholding the search conducted by DHS Privacy Office. Furthermore, the search as it pertained to FLETC was deemed Moot since FLETC had responded directly to the requester with records on November 18, 2013.

31.     On August 5, 2014, Plaintiff filed the instant law suit 14-cv-6117 in the United States District Court for the Southern District of New York. The law suit alleged failure to conduct an adequate search for records, denial of expedited processing, and improperly deeming the Plaintiffs' fee waiver request as moot.

32.     Out of an abundance of caution, on August 19, 2014, DHS Privacy Office decided to perform a second search for responsive records expanding on the original search terms and requesting a manual review instead of a simple key word review. At that time DHS Privacy Office again tasked CRCL, USCIS, and FLETC. DHS Privacy Office also tasked the DHS Office of Public Affairs (OPA), the DHS Office of Policy "Immigration

Division", and the DHS Office of the General Counsel (OGC) to conduct a search for responsive records.

33.     The DHS Office of Public Affairs (OPA) coordinates the public affairs activities of all of the Department's components and offices, and serves as the federal government's lead public information office during a national emergency or disaster. OPA is the primary point of contact for news media, organizations and the general public seeking information about Department of Homeland Security's programs, policies, procedures, statistics, and services. OPA assists the Secretary of Homeland Security on all public affairs, as well as strategic and internal communications matters.

34.     The DHS Office of Policy serves as a central resource to the Secretary and other Department leaders for strategic planning and analysis, and facilitation of decision-making on the full breadth of issues that may arise across the dynamic homeland security enterprise. The Office of Policy includes five sub-component offices and an advisory council, all of which are managed by the Policy Executive Office.  The Office of Policy conducts the following functions:

- Lead the coordination, integration, and development of DHS-wide policies, programs, strategies, and plans
- Facilitate decision-making by providing timely advice and analysis to the Secretary and other Departmental leaders
- Represent the Department at White House interagency policy committee meetings
- Develop long-term strategic priorities to increase operational effectiveness and mission execution
- Coordinate and support Departmental international engagement
- Serve as the point of contact for academics, the private sector, and other external homeland security stakeholders

35.	The Homeland Security Act defines the General Counsel (OGC) as the "chief legal officer of the Department." In this role, he is ultimately responsible for all of the Department's legal determinations and for overseeing all of its attorneys. The General Counsel is also the Department's regulatory policy officer, managing the rulemaking program and ensuring that all Department of Homeland Security regulatory actions comply with relevant statutes and executive orders. The Office of the General Counsel's central tasks includes:

- providing complete, accurate, and timely legal advice on possible courses of action for the Department;
- ensuring that Homeland Security policies are implemented lawfully, quickly, and efficiently;
- protecting the rights and liberties of any Americans who come into contact with the Department;
- facilitating quick responses to congressional requests for information; and
- representing the Department in venues across the country, including in the immigration courts of the United States.

36.	On October 9, 2014, FLETC responded to the second search request stating a new search did not yield any additional records above the 26 pages that were previously provided to the requester on November 18, 2013 by FLETC and again on March 7, 2014 by the DHS Privacy Office.

37.	CRCL also conducted a supplemental search on remand after concluding that the terms and descriptors culled from Plaintiffs' FOIA request used in the initial electronic search were possibly too narrow.  On October 30, 2014, CRCL identified 2, 528 pages of potentially responsive records after manually searching its investigative files for any complaints after January 20, 2009 involving ICE that have the following terms:  "ICE" and or "home, house, apartment, shelter, motel, residence, trailer, Nashville, Los Angeles,

Chicago, Alabama, New York (state or city), Cherokee, Chilton, DeKalb, Jackson, Jefferson, Shelby, Tuscaloosa, Fort Payne (or Ft. Payne), Scottsboro or Collinsville.

38. On November 17, 2014, DHS Privacy Office received a no records response from OPA indicating that they searched their database and found no records that matched the search criteria provided by the requester "home enforcement operation by ICE" from January 20, 2009 to present or the expanded search terms "home enforcement, home enforcement operations, home arrests, target enforcement, enforcement raids, enforcement operations".

39. On November 19, 2014, the Court entered a production order that stated, "The United States Department of Homeland Security is hereby ordered to produce 750 pages of responsive documents per month starting December 19, 2014."

40. On November 21, 2014, to ensure compliance, DHS tasked the Office of Intelligence & Analysis (I&A) to search for responsive records.

41. Office of Intelligence & Analysis (I&A) is part of a larger Homeland Security Enterprise that includes Departmental leaders and components, state, local, tribal, territorial and private sector partners and other Intelligence Community (IC) members, all of whom require and generate homeland security intelligence and information. I&A is a member of the U.S. Intelligence Community. The Under Secretary for I&A (U/SIA) also serves as DHS' Chief Intelligence Officer and is responsible to both the Secretary of Homeland Security and the Director of National Intelligence. The Intelligence and Analysis (I&A) mission is to equip the Homeland Security Enterprise with the intelligence and information it needs to keep the homeland safe, secure, and resilient. I&A's mission is supported by four strategic goals:

- Promote Understanding of Threats Through Intelligence Analysis;
- Collect Information and Intelligence Pertinent to Homeland Security;
- Share Information Necessary for Action;
- Manage Intelligence for the Homeland Security Enterprise.

42. On November 21, 2014, DHS Privacy Office received a no records response from I&A indicating that after a careful review of the initial FOIA request and search terms provided it was determined that I&A would have no records on that subject because I&A had no involvement with immigration enforcement actions.

43. On December 22, 2014, DHS Privacy Office received a no records response from Office of Policy "Immigration Division" indicating that they searched their database and found no records that matched the search criteria provided by the requester "home enforcement operation by ICE" from January 20, 2009 to present or the expanded search terms "home enforcement, home enforcement operations, home arrests, target enforcement, enforcement raids, enforcement operations".

44. On November 25, 2014, DHS Privacy Office receive notification from OGC that they had located some email records associated with the Associate General Counsel of the Immigration Law Division that might be responsive to the request.

45. On December 4, 2014, DHS Privacy Office tasked MGMT/OCIO to search and provide to DHS Privacy Office the email records associated with the Associate General Counsel of the Immigration Law Division that met the requesters search terms and the expanded search terms.  The search parameters and terms provided to MGMT/OCIO were as follows: "All records . . . related to the policies, procedures, or objectives of home enforcement operations from January 20, 2009, to the present." Using the following

keywords and or filters, "ICE OR home AND ("enforcement operations" OR arrests) OR "target enforcement"

46. The DHS Directorate for Management includes the Office of Chief Information Officer (MGMT/OCIO); The Directorate for Management is responsible for:

- budget, appropriations, expenditure of funds, accounting and finance;
- procurement; human resources and personnel;
- information technology systems;
- facilities, property, equipment, and other material resources; and
- identification and tracking of performance measurements relating to the responsibilities of the Department.

DHS MGMT/OCIO is the agency who manages they email system for DHS/HQ Offices which includes OGC. Therefore, in some instances, such as when voluminous records may be involved or electronic searches of email records may be more efficiently conducted by a system administrator, the task of conducting a search may be delegated to MGMT/OCIO.

47. On December 17, 2014, MGMT/OCIO provided DHS Privacy Office with all the potential responsive records located from the OGC email account of the Associate General Counsel of the Immigration Law Division for processing. The number of potential responsive documents totaled 16,211 after applying the date limits provided by the requester and a detailed key word search 18 documents totaling 538 pages were found to be responsive to the request.

48. On December 19, 2014, DHS Privacy Office released 778 pages of responsive documents found by the supplemental search conducted by CRCL. The 778 pages of

responsive documents consisted of 594 pages released in full and 184 pages withheld in full. An additional 1,012 pages were referred to other agencies for processing and direct response to the requester as follows; 949 to U.S. Immigration and Customs Enforcement (ICE), 62 to the Office of Inspector General (OIG) and 1 to Department of Justice (DOJ).

49. In response to a July 17, 2015, letter from Plaintiffs complaining about the adequacy of DHS searches, again out of an abundance of caution, on August 6, 2015, DHS Privacy Office tasked the DHS Office of Operations Coordination (OPS) to search for any potential responsive records using the search terms provided by the requester and any terms that would be associated with the requested information.

50. The DHS Office of Operations Coordination (OPS) is responsible for monitoring the security of the United States on a daily basis and coordinating activities within the Department and with governors, Homeland Security Advisors, law enforcement partners, and critical infrastructure operators in all 50 States and more than 50 major urban areas nationwide. The Office of Operations Coordination works to deter, detect, and prevent terrorist acts by coordinating the work of federal, state, territorial, tribal, local, and private sector partners and by collecting and fusing information from a variety of sources.

51. On August 10, 2015, DHS Privacy Office received a no records response from OPS indicating that they searched their database and found no records that matched the search criteria provided by the requester "home enforcement operation by ICE" from January 20, 2009 to present or the expanded search terms "home enforcement, home enforcement operations, home arrests, target enforcement, enforcement raids, enforcement operations".

52. On January 21, 2015, DHS Privacy Office released 1,007 pages of responsive documents found by OGC and CRCL. The OGC search yielded 538 responsive documents and CRCL released 469 responsive documents for the month of January. Of the 1,007 pages located 157 pages are releasable in full, 411 pages are releasable in part and 439 pages are withheld in full. An additional 71 pages were referred to U.S. Immigration and Customs Enforcement (ICE) and the DHS Office of Inspector General (OIG) for review and direct response to the requester.

53. On February 9, 2015, the AUSA assigned to the case received a letter from Plaintiffs requesting all fully redacted pages to be included in the release.

54. On February 12, 2015, DHS Privacy Office and CRCL through the AUSA provided an updated release to the Plaintiff containing all the released in full, released in part and withheld in full pages for both the December and January release.

55. DHS further conducted a re-review of the document previously produced by CRCL and determined, in its discretion, that certain additional information could be disclosed.

56. On August 31, 2015, DHS Privacy Office re-released 1, 247 pages of responsive documents previously produced by CRCL in the December 2014 and January 2015 releases. Of the 1,247 pages in the production, 181 pages were releasable in full, 935 pages were releasable in part and 131 pages were withheld in full.

57. As of August 31, 2005, DHS Privacy Office has completed the release of all responsive records found in reference to the Plaintiff's FOIA request after a complete and thorough search of CRCL, FLETC, USCIS, OPS, OPA, OIG, OGC, Office of Policy "Immigration Division" and I&A.

I declare under penalty of perjury that the foregoing is true and correct.

    Executed this 30th day of September, 2015.

    *[signature: Kevin L. Tyrrell]*

    **Kevin L. Tyrrell**
    Associate Director FOIA Appeals and Litigation