UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
IMMIGRANT DEFENSE PROJECT, HISPANIC :
INTEREST COALITION OF ALABAMA, and   :
THE CENTER FOR CONSTITUTIONAL        :
RIGHTS,                              :
                            Plaintiffs, :
                                                             :            14-CV-6117 (JPO)
                       -v-                                   :
                                                             :        OPINION AND ORDER
UNITED STATES IMMIGRATION AND        :
CUSTOMS ENFORCEMENT and UNITED       :
STATES DEPARTMENT OF HOMELAND        :
SECURITY,                            :
                            Defendants. :
                                                             :
-------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

The Immigrant Defense Project, the Hispanic Interest Coalition of Alabama, and the

Center for Constitutional Rights (collectively "Plaintiffs") bring this action against United States

Immigration and Customs Enforcement ("ICE") and the United States Department of Homeland

Security ("DHS") (together "Defendants") under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552 *et seq.*  Plaintiffs seek information related to ICE's enforcement and arrest

operations at homes and residences.  (Dkt. No. 31 at 1.)  Following initial discord over

Defendants' production of records, the Court directed Defendants to produce documents on a

rolling deadline.  (Dkt. No. 15.)  Pursuant to that order, Defendants have produced

approximately 8,500 pages of responsive documents.  (Dkt. No. 38 at 1.)  The parties now cross-

move for partial summary judgment on the adequacy of Defendants' search.

For the reasons that follow, Plaintiffs' motion is granted in part and denied in part, and

Defendants' motion is granted in part and denied in part.

I.      **Factual Background**

On October 17, 2013, Plaintiffs submitted a FOIA request to Defendants.  (Dkt. No. 1 ¶ 2 ("Compl."); Dkt. No. 1-1, Ex. 1.)  The request sought "electronic or written" records related to ICE "home raids" or "home enforcement operations," which Plaintiffs defined as entries, arrests, or other enforcement actions carried out "in, at, or around homes or residences."  (Dkt. No. 1-1, Ex. 1 at 2-3.)  The request expressed particular interest in operations conducted in specific counties in New York and Alabama (*id.* at 8), as well as Defendants' policies and practices more generally (Dkt. No. 31 at 2).  Initially, Defendants produced just twenty-six pages of "heavily redacted" documents from a single component of DHS.  (Dkt. No. 31 at 3.)  After exhausting FOIA's administrative process, Plaintiffs filed this suit on August 5, 2014, seeking an order from the Court directing Defendants to search for and to disclose all responsive records.  (*See* Compl. ¶¶ 1, 50, 61.)

The Court, with guidance from the parties, set out a rolling production schedule, directing Defendants to turn over responsive documents.  (Dkt. No. 15.)  Pursuant to that order, Defendants produced approximately 8,500 pages of responsive records.  (Dkt. No. 38 at 1.)  Plaintiffs again protested that Defendants had not fulfilled their obligations under FOIA and that responsive documents remained outstanding.  (Dkt. No. 16.)  At a status conference on August 4, 2015, the Court directed Defendants to provide declarations from agency personnel describing their searches.  (Dkt. No. 24 at 19.)

Following several declarations from Defendants (Dkt Nos. 32-2, 32-3, 32-4, 32-5), continued protests by Plaintiffs regarding the sufficiency of production, and failed negotiations between the parties, Plaintiffs filed for partial summary judgment on the adequacy of Defendants' searches (Dkt. No. 31 at 3-4).  Defendants filed a cross-motion on the same question

(Dkt. No. 38) and, with the Court's permission, provided supplemental declarations describing

their search efforts to date (*see* Dkt. Nos. 29, 39, 40, 41, 42).  The parties agreed to defer briefing

on the question of any applicable statutory exemptions that might excuse Defendants' production

of responsive documents.  (Dkt. No. 24 at 8-9, 11, 20.)

## II.      Discussion

Summary judgment is warranted when "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is

material if it "might affect the outcome of the suit under the governing law."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if, considering the record as

a whole, a rational jury could find in favor of the non-moving party.  *Ricci v. DeStefano*, 557

U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986)).  "Challenges to a government agency's response are usually resolved at summary

judgment in FOIA actions."  *Det. Watch Network v. U.S. Immigration & Customs Enf't*, No. 14

Civ. 583, 2016 WL 3926451, at *3 (S.D.N.Y. July 14, 2016) (citing *Carney v. U.S. Dep't of*

*Justice*, 19 F.3d 807, 812 (2d Cir. 1994)).

FOIA's purpose is "to ensure public access to information created by the government in

order 'to hold the governors accountable to the governed.'"  *Tigue v. U.S. Dep't of Justice*, 312

F.3d 70, 76 (2d Cir. 2002) (quoting *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242

(1978)).  "Specifically, FOIA requires that 'each agency, upon any request for records which (A)

reasonably describes such records and (B) is made in accordance with published rules, shall

make the records promptly available to any person.'"  *Halpern v. FBI*, 181 F.3d 279, 286 (2d

Cir. 1999) (internal alteration omitted) (quoting 5 U.S.C. § 552(a)(3)).  FOIA prioritizes

"disclosure, not secrecy," *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976), and, in a

summary judgment motion, puts the burden on the government agency resisting disclosure to demonstrate "that its search was adequate," *Carney*, 19 F.3d at 812 (citing *EPA v. Mink*, 410 U.S. 73, 79 (1973); 5 U.S.C. § 552(a)(4)(B)).

A withholding agency that has fulfilled its substantive obligation to produce responsive documents under FOIA can demonstrate the adequacy of its search at the summary judgment stage through the submission of detailed declarations describing the search procedures used.[1] *Carney*, 19 F.3d at 812.  As an initial matter, in this case, the declarations—together with their supplements—are sufficiently specific for the Court to judge the reasonableness of the underlying search.[2]  The discussion that follows therefore focuses on whether the search, as described in the submitted declarations, discharged Defendants' duties under FOIA.

---

[1]    Absent a showing of bad faith (not at issue here), "a district court may properly . . . award summary judgment on the basis of affidavits." *Welby v. U.S. Dep't of Health*, No. 15 Civ. 195, 2016 WL 1718263, at *3 (S.D.N.Y. Apr. 27, 2016) (quoting *Carney*, 19 F.3d at 812 (internal quotation marks omitted)).

[2]    In supplemental declarations submitted following Plaintiffs' motion for summary judgment, Defendants provide answers to Plaintiffs' outstanding questions about the nature of the searches conducted by various offices and officers, as well as the agencies' and sub-agencies' file structures.  (*See, e.g.*, Dkt. No. 31 at 6-7 (identifying deficiencies in the Harrington Declaration regarding the method of search and file organization); Dkt. 40 ¶¶ 9-10 (supplementing the Harrington Declaration with the method of search and location of underlying files).)  Following these submissions, Plaintiffs did not renew their argument that Defendants' descriptions of their searches are insufficient.  (*See* Dkt. No. 43 at 2, 6-7 (asking the Court to "find Defendants' searches inadequate" but not their descriptions, as previously asserted).)  In any event, Defendants' declarations and supplements provide the requisite level of "non-conclusory" detail. *Amnesty Int'l USA v. C.I.A.*, No. 07 Civ. 5435, 2008 WL 2519908, at *11 (S.D.N.Y. June 19, 2008*); see id*. at *8 ("[A] satisfactory agency affidavit should, at a minimum, describe in reasonable detail the scope and method by which the search was conducted and should describe at least generally the structure of the agency's file system which makes further search difficult.") (quoting *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993) (internal quotation marks omitted)).

Substantively, to satisfy Defendants' obligation at summary judgment, the declarations

must describe a search that was "reasonably calculated to discover requested documents."

*Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (quoting *SafeCard Servs.,*

*Inc., v. Sec. and Exchange Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).  The agency's

obligation is not trivial.  It must "construe [FOIA requests] liberally," *Amnesty Int'l USA v.*

*C.I.A.*, 728 F. Supp. 2d 479, 498 (S.D.N.Y. 2010) [hereinafter "*Amnesty II*"] (alteration in

original) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)),

and show that its search was "reasonably calculated to uncover all relevant documents,"

*Bloomberg L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 649 F. Supp. 2d 262, 271 (S.D.N.Y.

2009), *aff'd*, 601 F.3d 143 (2d Cir. 2010); *see also Nat'l Day Laborer Org. Network v. U.S.*

*Immigration & Customs Enforcement*, 877 F. Supp. 2d 87, 95 (S.D.N.Y. 2012).  But neither is

the agency's obligation unreasonable: The agency's search "need not be perfect" and is judged

by whether it was designed to comply with the request rather than by the number of responsive

pages it produced.  *Grand Cent. P'ship, Inc.*, 166 F.3d at 489 (citing *SafeCard*, 926 F.2d at

1201).  To that end, "a reasonable search need not uncover every document extant" to satisfy

FOIA's mandate.  *Bloomberg L.P.*, 649 F. Supp. 2d at 269.

Agency affidavits describing the underlying searches are "accorded a presumption of

good faith."  *Grand Cent. P'ship, Inc.*, 166 F.3d at 489 (quoting *Carney*, 19 F.3d at 812).

Summary judgment in an agency's favor, based on its submissions, is "inappropriate 'where the

agency's response raises serious doubts as to the completeness of the agency's search, where the

agency's response is patently incomplete, or where the agency's response is for some other

reason unsatisfactory.'" *Nat'l Day Laborer Org. Network*, 877 F. Supp. 2d at 96 (quoting *Exxon*

*Corp. v. Fed. Trade Comm'n*, 466 F. Supp. 1088, 1094 (D.D.C. 1978)).  Plaintiffs can further

defeat summary judgment in the agency's favor by raising "tangible evidence" that the agency's search was not complete.  *Carney*, 19 F.3d at 812.  Plaintiffs must aver specific evidence about a search's inadequacy; "purely speculative claims about the existence and discoverability of other documents" are not enough.[3]  *Adamowicz v. I.R.S.*, 402 F. App'x 648, 650 (2d Cir. 2010) (quoting *Grand Cent. P'ship, Inc.*, 166 F.3d at 489).  A district court that finds a search to be inadequate may direct the defendant to conduct additional searches.  *See, e.g.*, *Nat'l Day Laborer Org. Network*, 877 F. Supp. 2d at 112.

While Defendants argue they are entitled to summary judgment on the adequacy of their search, Plaintiffs contest several aspects of the search.  They argue that Plaintiffs—not Defendants—are entitled to summary judgment based upon: (1) the inadequacy of the search terms and strategies Defendants used; (2) Defendants' failure to follow up on certain leads raised in the course of their search; and (3) Defendants' failure to search several ICE components for responsive records.  These arguments are addressed in turn.

### A.    Adequacy of Defendants' Search Terms

Defendants argue their search was sufficient based on the search terms and strategies described in the declarations.  Plaintiffs meanwhile maintain that many searches carried out by Defendants' various components and offices used insufficient search terms and techniques.  (*See* Dkt. No. 32-8.)

When evaluating the sufficiency of an agency's search, courts—mindful of the agency's superior knowledge of its recordkeeping system and the presumption of good faith owed to the declarations describing the request—look to whether the search appears designed to return all

---

[3]    Where a plaintiff has established that "the agency *has not* satisfied its burden, a showing of bad faith is not necessary."  *Families for Freedom v. U.S. Customs & Border Prot.*, 837 F. Supp. 2d 331, 336 (S.D.N.Y. 2011) (emphasis in original).

relevant records. *Amnesty Int'l USA v. C.I.A.*, No. 07 Civ. 5435, 2008 WL 2519908, at \*15

(S.D.N.Y. June 19, 2008) [hereinafter "*Amnesty I*"] (citing *Truitt v. Dep't of State*, 897 F.2d 540,

542 (D.C. Cir. 1990)).  But FOIA does not give requesters the right to Monday-morning-

quarterback the agency's search.  *See, e.g.*, *Conti v. U.S. Dep't of Homeland Sec.*, No. 12 Civ.

5827, 2014 WL 1274517, at \*15 (S.D.N.Y. Mar. 24, 2014) ("[A]n agency is not required to

search for all possible variants of a particular name or term.").  Indeed, the search need not be

"perfect" in Plaintiffs' estimation (or even the Court's), so long as the agency "has provided

logical explanations for each of the decisions it made as to search terms to be used and how to

conduct the searches," evincing a good faith effort to design a comprehensive search.  *Fox News*

*Network, LLC v. U.S. Dep't of Treasury*, 739 F. Supp. 2d 515, 535 (S.D.N.Y. 2010).

Defendants have submitted four declarations and supplemental declarations detailing the

search terms used and describing, in varying degrees of detail, why certain search terms were

chosen by various components and field offices to produce records most responsive to Plaintiffs'

request.  Some descriptions are the model of specificity and clarity (*see* Dkt. No. 32-5; Dkt. No.

39), while others are less sterling (*see* Dkt. No. 32-3).  Even in those less detailed descriptions,

Defendants' declarations and supplements still provide an account of the search terms used (*e.g.*,

Dkt. No. 42 (providing an extensive list of search terms used)) and the location of the search

(*e.g.*, Dkt. No. 41 ¶ 8 (describing one ICE unit's statistical information as "resid[ing] in the

Enterprise Data Warehouse, and not in local files, folders, or email accounts")).  Defendants

aver that these searches were calculated, "based on . . . knowledge and experience," to return

responsive documents.  (Dkt. No. 41 ¶ 4.)  Taken together, these declarations demonstrate a use

of search terms and strategies on Defendants' part that was reasonably calculated to find

responsive documents.[4]

To rebut the adequacy of the search terms and strategies described in Defendants'

declarations, Plaintiffs point to Defendants' failure to use certain terms, such as "warrant,"

"consent," or "gang," and certain search strategies, such as Boolean connectors.  (Dkt. No. 31 at

13.)  But the omission of certain search terms or keywords does not alone demonstrate that

Defendants' search was inadequate.  *See Conti*, No. 12 Civ. 5827, 2014 WL 1274517, at *15; *see

also Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015) ("In

general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request.  Rather, a

federal agency has discretion in crafting a list of search terms that they believe to be reasonably

tailored to uncover documents responsive to the FOIA request." (internal quotation, alteration, and

citation omitted)); *Physicians for Human Rights v. U.S. Dep't of Def.*, 675 F. Supp. 2d 149, 164

(D.D.C. 2009) ("[T]here is no bright-line rule requiring agencies to use the search terms

proposed in a FOIA request.").  Courts in this District have found that agencies fulfilled their

obligation under FOIA even where the agency failed to search certain terms listed in a FOIA

request or emphasized by a plaintiff, so long as the agency provided an explanation as to why the

search term was not used (such as, the futility of the term to narrow the field of documents or an

office's failure to use the term in question in its records or recordkeeping).  *E.g.*, *Fox News

Network, LLC*, 739 F. Supp. 2d at 535.

---

[4]      Defendants' reliance, in some instances (*e.g.* Dkt. No. 41 ¶ 4), on the
representations of individuals tasked with searching their personal files does not undermine the
sufficiency of the search.  *See Fox News Network, LLC*, 739 F. Supp. 2d at 535 (accepting
declarations that "relie[d] on . . . individuals' representations that they produced all responsive
documents" where "individual employees search[ed] their emails and documents").

Defendants, in fact, provide explanations for why some search terms, in particular, were not used. (*See, e.g.*, Dkt. No. 42 ¶ 11 (stating terms proposed by Plaintiffs, including "home," "enforcement," "target," "consent," "gang," or "warrant" would be "overly broad when taken in context with [ICE's] work").) They also aver that search strategies suggested by Plaintiffs would be impracticable or impossible for certain components or offices. (Dkt. No. 38 at 11 ("[N]ot all agency systems and databases allow for such advanced searching.") Plaintiffs' insistence on a laundry list of specific search terms and strategies is therefore unavailing.

Plaintiffs further argue that Defendants' use of different terms in different offices demonstrates that the search was "slipshod," "inconsistent," and inadequate. (Dkt. No. 31 at 12.) Defendants counter that "[t]he precise manner in which each DHS and ICE office searched varied from office to office, based on, for example, the differing responsibilities of offices and the ways in which each office organizes its files." (Dkt. No. 38 at 8.)

Defendants' use of varied search terms does not *per se* undermine the adequacy of the search, so long as Defendants offer an account of its search strategy in each location. *Fox News Network, LLC*, 739 F. Supp. 2d at 534 ("[T]here is no requirement that an agency use identical search terms in all of its offices."). Here, Defendants have, as discussed above, provided an account for how each office or component was searched and have offered some explanation of why. Defendants' heterogeneous search terms therefore do not demonstrate that the search was inadequate as a matter of law.

The only search technique used by Defendants that is beyond the pale—and has previously been deemed unsatisfactory by courts in this District—is the use, by several field offices, of plural nouns (such as "home enforcement operations," "enforcement operations," "arrest statistics," or "quotas") in the absence of a search for the singular form. (Dkt. No. 31 at 13-15; Dkt. No. 32-1.) In an analogous case, a court in this District explained that "a search that

is designed to return documents containing the phrase 'CIA detainees' *but not* 'CIA detainee' . . .

is not 'reasonably calculated to uncover *all* relevant documents.'"  *Amnesty I*, 2008 WL

2519908, at *1, *15.  This is especially so given that, by Defendants' representation, had

Defendants instead searched for only the singular form, they would have yielded documents

containing the plural form as well.  (*See, e.g.*, Dkt. No. 42 ¶ 14 ("The [singular form] search

terms used by [the ICE Office of Professional Responsibility] would also retrieve the plural

version of the search terms as well . . . ."); *id.* ¶ 16 (confirming the same with respect the ICE

Enforcement Removal Operations ("ERO") Office of Training and Development).)

Defendants fail to provide an explanation that would justify conducting searches using

the plural form only.  (*See* Dkt No. 32-2 ¶¶ 11.a (disclosing that the ERO Buffalo Field Office

used the terms "home enforcement operations," "quotas," "statistics," "targets," "non-targets,"

and "collaterals" but failing to account for the use only of the plural form); i*d.* ¶ 11.c (describing

the ERO New York Field Office's use of the term "fugitive operations" without reason for

excluding the singular form); Dkt. No. 40 ¶ 11 (failing to supplement Defendants' disclosures

"[w]ith respect to the searches conducted by the ERO Buffalo Field Office . . . and the ERO New

York Field Office"); Dkt. 32-4 ¶ 39 (failing to explain the ICE Office of Professional

Responsibility's use of plural compound nouns "enforcement operations" and "home

enforcement operations"); Dkt. No. 41 ¶ 10 (failing to explain the use by the ICE Homeland

Security Investigations New York Office of the term "arrest statistics" without the singular

form).)  Without explanation, such searches do not appear to be calculated to produce all

responsive records.

Accordingly, Defendants' motion for partial summary judgment on this question is

granted in part and denied only with respect to the exclusive use, by several constituent offices,

of plural nouns.  Plaintiffs' motion for partial summary judgment is correspondingly granted in part.  Components that searched the plural form only (such as "home enforcement operations," "enforcement operations," "arrest statistics," or "quotas") and failed to adequately justify this omission—namely, the ICE ERO Buffalo and New York Field Offices, the ICE Office of Professional Responsibility ("OPR"), and the ICE Homeland Security Investigations New York Office (Dkt. No. 32-1 at 2-3)—are directed to conduct a supplemental search for the singular form of the relevant term or terms.

### B.      Defendants' Obligation to Pursue Leads

Plaintiffs also argue that Defendants' search was inadequate on the basis of a document produced in their own FOIA disclosures: a report of investigation ("ROI") generated by OPR in response to complaints made to the DHS Office of Civil Rights and Civil Liberties ("CRCL"). (Dkt. No. 32-6.)  This document, Plaintiffs argue, provides a "positive indication" that Defendants' search was incomplete—namely, that Defendants' search failed to turn up other similar documents at OPR.  (Dkt. No. 43 at 8-9.)

Agencies are "obliged to pursue any 'clear and certain' lead" that may relate to the subject of a FOIA request.  *Halpern v. F.B.I.*, 181 F.3d at 288-89 (quoting *Kowalczyk v. Dep't of Justice,* 73 F.3d 386, 389 (D.C. Cir. 1996)).  Specifically, an agency must pursue those leads "that raise red flags pointing to the probable existence of responsive agency records that arise during its efforts to respond to a FOIA request."  *Amnesty II*, 728 F. Supp. 2d at 498 (quoting *Wiesner v. F.B.I.*, 668 F. Supp. 2d 164, 170-71 (D.D.C. 2009)).  But "an agency's hesitancy to pursue potential leads after its search has been completed, does not lead to the conclusion that the agency's search was inadequate."  *Id.* (quoting *Citizens for Responsibility & Ethics in Wash.*

11

*v. U.S. Dep't of Interior*, 503 F.Supp.2d 88, 100 (D.D.C. 2007) (internal quotation marks and alterations omitted)).

Defendants argue that the ROI does not indicate a need for further searches because the report—while permitted following complaints filed with CRCL—was not required by office policy.  (Dkt. No. 48 at 2; Dkt. No. 44-1 at 7.)  As a result, Defendants represent that the production of a single responsive ROI does not prove that additional responsive ROIs exist in the ether, not captured by Defendants' search of OPR's "case management system."  (Dkt. No. 31 at 15-16.)

Courts in this District have found, under similar circumstances, that "[t]he fact that two more responsive documents were located in an area that the [agency] determined would probably not lead to uncovering responsive documents does not render the [agency's] search inadequate." *Amnesty II*, 728 F. Supp. 2d at 498.  This is because "a reasonable search need not uncover every document extant." *Bloomberg L.P.*, 649 F. Supp. 2d at 269.  "To find otherwise would reduce the [agency] to 'full-time investigators on behalf of requesters.'" *Amnesty II*, 728 F. Supp. 2d at 498 (quoting *Judicial Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000)). This is especially so in this case, where Plaintiffs directed their FOIA request to multiple agencies—which carried out separate searches by different personnel—and the document allegedly requiring follow-up would have subjected Defendant-agencies to an unduly burdensome "cross-review" of their independent production.  (Dkt. No. 38 at 20 n.7.)

Plaintiffs' motion for partial summary judgment that Defendants' search was inadequate based upon the discovery of the ROI is therefore denied.  Defendants' motion for partial summary judgment on this issue is correspondingly granted.

### C.       Defendants' Failure to Search Components or Offices

Plaintiffs further contend that Defendants unreasonably failed to search several offices or

components for potentially responsive records, including the ICE Office of Public Affairs

("OPA") and the ICE ERO Law Enforcement Systems and Analysis ("LESA").[5]  (Dkt No. 31 at

16-17; Dkt. No. 43 at 8.)

Defendants properly forwarded Plaintiffs' request to the components in question and

instructed these components to provide all responsive records.  As discussed above, FOIA

officers in many components and field offices deemed that their offices would likely contain

responsive records and accordingly carried out searches.

Other offices—such as the ICE Office of State, Local, and Tribal Coordination

("OSTLC") (*see* Dkt. No. 42 at ¶ 19)—determined, under a fair reading of the FOIA request and

based upon their knowledge of the office's practices and records, that a search was unlikely to

yield responsive documents.  *See Grand Cent. P'ship, Inc.*, 166 F.3d at 489.  Plaintiffs no longer

contend that ICE's failure to search OSTLC was unreasonable, following Defendants'

explanation that, "based on the Chief of Staff's knowledge and expertise of the office's practices

and activities," the Office concluded it "doesn't have involvement with home enforcement

operations matters, and therefore a search would not be reasonably calculated to uncover relevant

documents." (Dkt. No. 42 ¶ 19.)

However, two offices—ICE's OPA and LESA (*see* Dkt. No. 42 ¶¶ 17; Dkt. No. 40 ¶ 8)—

declined to conduct searches based on an overly narrow construction of Plaintiffs' request.  With

respect to these offices, Defendants failed to meet FOIA's requirement that they search all

---

[5]       Plaintiffs originally sought a search by ICE's Office of State, Local and Tribal
Coordination ("OSTLC") and DHS's Office of Operations Coordination ("OPS"), but dropped
these claims following Defendants' supplemental declarations.  (Dkt. No. 43 at 7 n.1.)

locations likely to produce responsive documents. *See Grand Cent. P'ship, Inc.*, 166 F.3d at

489.

*ICE Office of Public Affairs.*  As regards ICE OPA, Defendants argue that no search was

required because the records possessed by the Office fall outside the scope of Plaintiffs' request.

At OPA, a FOIA point of contact "received the FOIA request . . . and based on

experience and knowledge of OPA's practices and activities, determined that a Management

Program Analyst should be tasked to search."  (Dkt. No. 42 ¶ 17.)  The Management Program

Analyst, in turn, responded "that OPA doesn't have involvement with home enforcement

operations matters, and therefore a search would not be reasonably calculated to uncover any

relevant documents.  In addition, any documents maintained by OPA, such as press releases,

would fall outside the scope of the FOIA request as written."  (*Id.*)

But OPA's stated reason that it need not search for responsive documents underestimates

the Office's obligation under FOIA.  An agency must "construe [FOIA requests] liberally."

*Amnesty II*, 728 F. Supp. 2d at 498 (alteration in original) (quoting *Nation Magazine*, 71 F.3d at

890).  Relevantly, Plaintiffs request "overview documents," described as any records even

"*referencing* home enforcement operations."  (Dkt. No. 1-1, Ex. 1 at 3 (emphasis added).)

Plaintiffs, in fact, indicate that records *related to* such press "announcements" fall within their

request.  (Dkt. No. 31 at 16-17.)  Accordingly, Defendants should have read the request to

encompass documents related to "press releases" that ICE's OPA (by Defendants' own

representation) may well have generated.

*ICE ERO Law Enforcement Systems and Analysis ("LESA").*  Defendants also argue that

they need not search LESA because the office does not track or code data in a manner that would

allow the component to produce responsive data.  (Dkt. No. 48 at 3.)

Defendants submit that, "[u]pon receipt of the initial FOIA request," a FOIA point of contact in LESA "reviewed the substance of the request and, based on their experience and knowledge of their office's practices and activities, tasked a LESA Manager to search for potentially responsive documentation." (Dkt. No. 32-2 ¶ 8.a.)  The Manager, in turn, "indicat[ed] that LESA does not track information on home enforcement operations." (*Id.*)  Defendants represent that, while LESA does record "data point[s] such as specific addresses" where enforcement operations are carried out, the component "does not know—and does not track—whether that address is a business, a residence, a street, or some other type of location." (Dkt. No. 40 ¶ 8.)  As a result, "LESA is not able to determine what [recorded] addresses represent in terms of whether they are a residence, a business or any other type of location and would be unable to perform a search by a 'type' of location." (*Id.*)  Based on the operative FOIA request's wording and LESA's recordkeeping practices, Defendants determined that a search of LESA would not yield responsive documents.  (*Id.*; Dkt. No. 32-2 ¶ 8.a.)

But Defendants' chief reason for failing to search LESA is not valid under FOIA.  As part of an agency's obligation to "construe [FOIA requests] liberally," *Amnesty II*, 728 F. Supp. 2d at 498 (alteration in original) (quoting *Nation Magazine*, 71 F.3d at 890), the agency has "no right to resist disclosure because the request fails reasonably to describe records unless it has first made a good faith attempt to assist the requester in satisfying that requirement," *Ruotolo v. Dep't of Justice*, 53 F.3d 4, 10 (2d Cir. 1995) (quoting *Ferri v. Bell*, 645 F.2d 1213, 1221 (3d Cir.1981) (internal quotation marks omitted)).  While Defendants are correct that they are not obligated to "create a new record in response to a request for one," *Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 231, 246 (D. Conn. 2012), Plaintiffs have indicated that they would accept a sample of Defendants' records—in their current form—as Plaintiffs could calculate aggregate

statistics from raw data themselves to satisfy their initial request (Dkt. No. 43 at 8; *see also* Dkt. No. 1-1, Ex. 1 at 6-9).  "[N]arrow[ing]" a FOIA request to assist Plaintiffs in obtaining responsive records is part of an agency's obligation to "assist" the requester.  *Ruotolo*, 53 F.3d at 10.  The proposed narrower request at issue here is not unreasonable or overly burdensome, as it describes records held by LESA.

In the alterative, Defendants argue that LESA need not provide a sample of raw data (from which Plaintiffs might infer the aggregate statistics they seek) because these data are exempt.  (Dkt. No. 48 at 4.)   But this argument, too, fails—at least for now.  Parties agreed prior to this round of briefing that exemptions would not be at issue.  (*See* Dkt. No. 24 at 8-9, 11, 20.) The Court therefore defers the question of potential FOIA exemptions for another day.

For the purposes of search adequacy, Defendants' failure to provide a data sample responsive to Plaintiffs' request is deemed inadequate.  Failing a future showing that the documents are exempt, Defendants are directed to produce a responsive sample from LESA's database.

Plaintiffs' motion for summary judgment is granted in part, with respect to Defendants' failure to search ICE's OPA and LESA components.  Defendants' corresponding motion is denied on this issue.

## III.    Conclusion

For the reasons discussed above, Plaintiffs' motion for partial summary judgment on the question of the adequacy of Defendants' search is granted in part and denied in part. Defendants' cross-motion for partial summary judgment on the same question is also granted in part and denied in part.

Defendants are directed to carry out the following additional searches: (1) in the ICE

Enforcement and Removal Operations Buffalo and New York Field Offices, the ICE Office of

Professional Responsibility, and the ICE Homeland Security Investigations New York Office,

Defendants shall, within sixty days, conduct an additional search using the singular form of

relevant plural nouns; (2) in ICE's OPA, Defendants shall, within sixty days, carry out a search

reasonably calculated to respond to Plaintiffs' request; and (3) barring an applicable exemption

to be addressed in future briefings, Defendants shall produce a responsive sample of data from

ICE's LESA component.  All other aspects of Defendants' search are held to be adequate under

FOIA.

The Clerk of Court is directed to close the motions at Docket Number 30 and Docket

Number 37.

SO ORDERED.

Dated:  September 23, 2016
         New York, New York

_____
J. PAUL OETKEN
United States District Judge